**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**MICHAEL BARLOW,**

                    **Plaintiff,**

                                                              **16-CV-818V**

          **-v-**

**NATIONSTAR MORTGAGE, LLC,**
**and BANK OF AMERICA, N.A.,**

                    **Defendants.**
_____


## REPORT, RECOMMENDATION, AND ORDER

This case was referred to the undersigned by the Hon.

Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters

and to hear and report on dispositive motions.  Dkt. #3.


## PRELIMINARY STATEMENT

On October 14, 2016, plaintiff, Michael Barlow ("plaintiff" or "Barlow")

commenced this action seeking to permanently enjoin the defendants Nationstar

Mortgage, LLC ("Nationstar") and Bank of America ("BANA") from "any foreclosure

activity" with respect to his property located at 6348 Ward Road, Sanborn, New York

14132 ("Subject Property").  Dkt. #1.  Currently before the Court are Nationstar's and

BANA's motions to dismiss for lack of subject matter jurisdiction and for failure to state a

claim.  Dkt. Nos. 12 & 13.  For the following reasons, it is recommended that

defendants' motions to dismiss be GRANTED.

1

## MOTION TO DISMISS BASED ON LACK OF SUBJECT MATTER JURISDICTION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court "must accept as true all material allegations in the complaint" and interpret a *pro se* plaintiff's complaint "to raise the strongest arguments" that the allegations suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  The court may also refer to evidence outside the pleadings.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Id.*  Because jurisdiction must be shown affirmatively, a court may not conclude that jurisdiction exists based on inferences drawn in a plaintiff's favor. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)


## FACTS

By Note executed on February 2, 2007, Barlow borrowed $62,000 from First Franklin Financial Corporation to secure a mortgage on the Subject Property. Dkt. #13-5, pp. 2-7; Dkt. #13-6, pp. 1-20.  The mortgage was duly recorded in the Niagara County Clerk's Office on February 7, 2007.  Dkt. #13-6, p. 2.  According to BANA, it serviced the loan from October 8, 2010, through June 2013, approximately, at which time Nationstar assumed responsibility.  Dkt. #13-3, p. 6.[1]  In the interim, Barlow's loan was modified pursuant to a Loan Modification Agreement dated May 31, 2011

---

[1]  Plaintiff contends that Nationstar began servicing the loan on or about August 2011.  Dkt. #1, ¶ 9.

("2011 LMA"), which created a new lien in the amount of $86,570, and converted the

loan from an adjustable rate mortgage to a fixed rate mortgage.  Dkt. #12-6, pp. 4-5.

Pursuant to the 2011 LMA, Barlow was required to make consecutive monthly

payments of principal and interest.  Dkt. #12-6, p. 5.

On March 13, 2012, the mortgage was assigned to U.S. Bank, National

Association, Successor Trustee to Bank of America, N.A. as Successor to LaSalle

Bank, N.A. as Trustee for the Merrill Lynch First Franklin Mortgage Loan Trust,

Mortgage Loan Asset-Backed Certificates, Series 2007-2 ("U.S. Bank").  Dkt. #13-7,

pp. 2-4.  Barlow apparently failed to make his mortgage payments, effectively defaulting

on or about August 1, 2012, according to BANA.  Dkt. #3-8, p. 5.  U.S. Bank

commenced a foreclosure action ("Foreclosure Action") against Barlow in New York

State Supreme Court, Niagara County ("State Court") on August 8, 2013.  Dkt. #13-8,

pp. 2-13.  According to the Affidavit of Service, Barlow was properly served with the

Summons and Complaint in the Foreclosure Action at the Subject Property on August

15, 2013.  Dkt. #13-9, p. 2.

According to Barlow, Nationstar offered him a trial modification in 2015,

which increased his monthly payments by $355.17 per month.  Dkt. #1, p. 3.  The Loan

Modification Agreement signed by Barlow on January 13, 2016 ("2016 LMA"), sets forth

his balances as follows:  original unpaid balance - $62,000; current unpaid principal

balance - $84,022.17; "new money" - $54,725.06; and new unpaid principal balance -

$116,725.06.  Dkt. #12-12, pp. 15-16.

On June 16, 2016, Barlow attempted to serve an answer to the complaint in the Foreclosure Action, which was filed nearly three years prior.  Dkt. #13-10, pp. 3-4. U.S. Bank rejected and returned the answer on the grounds that it was untimely.  Dkt. #13-10, p. 2.  U.S. Bank moved for Judgment of Foreclosure and Sale in the Foreclosure Action on May 31, 2016.  Dkt. #13-11, pp. 2-6.  Barlow filed a "written entry" in opposition to the Motion for Judgment of Foreclosure and Sale in which he challenged Nationstar for:  failing to prove his "alleged escrow deficiency of $14,893.02" which "spurred the serious payment increase and pushed [him] into . . . foreclosure"; for failing to explain the "new money" charges; misapplying payments he made under the 2015 LMA; being predatory in pushing his loan to a 480-month amortization schedule; and failing to serve him with notice to attend the foreclosure settlement conference. Dkt. #13-12, pp. 2-3.

U.S. Bank filed a reply in the Foreclosure Action (Dkt. #13-13, pp. 2-14), in which it:  broke down how Barlow's escrow deficiency was calculated (Dkt. #13-13, p. 8); explained that the "new money" consisted of the "increase from the prior loan modification from the original loan amount pf $62,000.00 to $86,570.03, less any payments made after the modification went into effect," "accrued interest through the date of the new modification, plus any escrow advances for taxes and insurance" made by U.S. Bank on Barlow's behalf, reflecting a total amount due of $116,920.92 (Dkt. #13-13, pp. 8-9); offered that Barlow's claim that "this figure cannot be possible" ignored that Barlow had a prior modification increasing his principal balance, had not made payments on his loan for nearly four years while interest had continued to accrue,

and had advanced taxes and insurance from U.S. Bank to protect the Subject Property

(Dkt. #13-13, p. 9); submitted proof that Barlow's 2015 payments under the trial

modification were applied to his previously unpaid loan balance for August, September,

October, November, and December 2012 (Dkt. #13-13, pp. 6-7);[2] reported that Barlow

failed to sign and notarize two copies of the 2015 LMA so that the trial modification

could be made permanent (Dkt. #13-13, pp. 7-8); and explained that pushing Barlow's

loan to a 480-month amortization schedule was consistent with the U.S. Treasury's

Home Affordable Modification Program ("HAMP")[3] guidelines (Dkt. #13-13, pp. 9-10).


With respect to the foreclosure settlement conference, U.S. Bank offered

proof that the State Court Judge presiding over the Foreclosure Action, the Honorable

Mark A. Montour, notified Barlow and U.S. Bank by letter dated February 18, 2014, that

a settlement conference would be held on March 27, 2014.  Dkt. #13-13, p. 3.  Barlow

failed to appear at the conference and U.S. Bank was granted permission to proceed

with the foreclosure.  Dkt. #13-13, p. 3.  On March 25, 2015, Judge Montour issued an

Order granting a default against Barlow and appointing Connie M. Lozinsky, Esq., as

referee, to compute what amount was due and owing to U.S. Bank.  Dkt. #13, p. 4.


On September 21, 2016, Judge Montour entered a Judgment of

Foreclosure and Sale in favor of U.S. Bank in the Foreclosure Action.  Dkt. #13-14,

---

[2]  At the time of U.S. Bank's reply in September of 2016, Barlow's mortgage was considered paid up to January 1, 2013.  Dkt. #13-13, p. 7.
[3]  HAMP is a program within "Making Home Affordable" offered by the U.S. Department of the Treasury "to offer homeowners who are at risk of foreclosure reduced monthly mortgage payments."  *Making Home Affordable*, https://www.treasury.gov/initiatives/financial-stability/TARP-Programs/housing/mha/Pages/hamp.aspx

p. 2-12.  Judge Montour confirmed the referee's report that Barlow owed $116,920.92 to U.S. Bank as of February 8, 2016, plus interest and other expenses incurred thereafter, and ordered that the Subject Property should be sold as one parcel.  Dkt. #13-14, pp. 2-3.  Barlow apparently did not appeal this decision to the New York State Appellate Division.

Plaintiff filed a complaint in this Court on October 14, 2016, against BANA and Nationstar alleging fraud, misrepresentation, and violation of New York General Business Law § 349, and seeking to permanently enjoin them from foreclosing on the Subject Property.  Dkt. #1.  Plaintiff thereafter filed a Motion for a Preliminary Injunction or Temporary Restraining Order restraining Nationstar from conducting a foreclosure sale on the Subject Property on December 5, 2016, and for an expedited briefing schedule.  Dkt. #2.

During a telephone conference on November 10, 2016, BANA and Nationstar agreed to hold the sale of the Subject Property in abeyance until January 6, 2017.  Dkt. #10.  By Text Orders entered on November 10, 2016, this Court denied as moot plaintiff's Motion for a Preliminary Injunction or Temporary Restraining Order in light of the defendants' agreement to hold off on the sale (Dkt. #11), set an expedited schedule for defendants to answer or move against the complaint and for plaintiff to reply, and ordered that the sale of the property could not take place prior to January 6, 2017 (Dkt. #10).  BANA and Nationstar timely moved to dismiss the complaint based on, among other things, this Court's lack of subject matter jurisdiction.

Dkt. Nos. 12 & 13.  Plaintiff responded to each motion separately (Dkt. Nos. 15 & 16)

and the defendants filed separate replies (Dkt. Nos. 17 & 18).  For the following

reasons, this Court finds that it lacks jurisdiction over plaintiff's case and recommends

that defendants' motions to dismiss be granted on this basis.

## DISCUSSION AND ANALYSIS

The *Rooker-Feldman* doctrine[4] precludes federal district courts from

exercising jurisdiction over "cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments."  *Exxon*

*Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Courts within the

Second Circuit "have consistently held that any attack on a judgment of foreclosure is

clearly barred by the *Rooker-Feldman* doctrine."  *Niles v. Wilshire Inv. Grp., LLC*, 859 F.

Supp. 2d 308, 334 (E.D.N.Y. 2012).

The *Rooker-Feldman* doctrine precludes federal district court review when

four factors are met:  (1) the federal court plaintiff lost in state court; (2) the plaintiff

complains of injuries caused by a state court judgment; (3) the plaintiff invites the district

court to review and reject the state court judgment; and (4) the state court judgment was

---

[4]  This doctrine is named after the two United States Supreme Court cases which pronounced
when federal subject matter jurisdiction over state court cases is barred.  *See Rooker v. Fidelity*
*Trust Co.,* 263 U.S. 413, 414-15 (1923) (holding that the federal district court lacked jurisdiction
over a suit to have a state-court decision "declared null and void" because "[t]o do so would be
an exercise of appellate jurisdiction" over state court judgments, which only the Supreme Court
possesses); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983) (holding
that a federal district court lacked jurisdiction over claims raised in a suit brought by plaintiff who
was refused admission to the D.C. bar by the District's highest court because a federal district
court "has no authority to review final judgments of a state court in judicial proceedings").

rendered before the district court proceedings were commenced. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The second and third of these factors are considered "substantive." *Id.* This Court finds that each of the *Rooker-Feldman* factors is met in this case.

First, it is undisputed that plaintiff lost the Foreclosure Action in State Court. Second, plaintiff complains of injuries caused by the Foreclosure Action, namely, the foreclosure of his property, based on the State Court's finding that plaintiff owes U.S. Bank $116,920.92; and the Subject Property should be sold to satisfy the debt. In his federal case before this Court, Plaintiff's alleges that BANA and Nationstar engaged in fraud, misrepresentation and violated New York Business Law § 349 by miscalculating his escrow account and failing to apply his 2015 payments to his mortgage. Dkt. #1. Plaintiff raised these very same arguments to Judge Montour when opposing U.S. Bank's Motion for Judgment of Foreclosure and Sale. Judge Montour rejected plaintiff's claims as evidenced by the fact that he entered a Judgment of Foreclosure and Sale against the plaintiff. Dkt. #13-14, pp. 2-12. Plaintiff cannot now re-litigate these identical issues in a federal forum.

That plaintiff alleges fraudulent acts on the part of BANA and Nationstar does not confer subject matter jurisdiction on this Court. The *Rooker-Feldman* doctrine extends to cases in which a federal court plaintiff alleges that a judgment of foreclosure was procured by fraud. *See, e.g., Swiatkowski v. Citibank,* 745 F. Supp. 2d 150, 164-65 (E.D.N.Y. 2010) (finding that the *Rooker-Feldman* doctrine applied to the federal

plaintiff's case – notwithstanding plaintiff's allegations that defendants submitted fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts – because the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); *Parra v. Greenpoint Mortgage Co.*, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) (holding that "[t]he fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claim from the ambit of *Rooker-Feldman*"); *Dockery v. Cullen & Dykman,* 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (holding the same).

Plaintiff concedes that the third and fourth elements of the *Rooker-Feldman* Doctrine are met here, and it is clear that they are. Dkt. #15, p. 4. In filing this federal action, plaintiff is asking this Court to review and reject the State Court's Judgment of Foreclosure and Sale, including the finding that plaintiff owes the amount calculated by the referee and adopted by Judge Montour. Finally, there is no question that the State Court entered the Judgment of Foreclosure and Sale prior to plaintiff filing his lawsuit in federal court.

All of these factors having been satisfied, *Rooker-Feldman* bars this Court from reviewing the State Court Judgment of Foreclosure and Sale against plaintiff.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendants' motions to dismiss (Dkt. Nos. 12 &13) be granted.

9

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation, and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b)(2) and Local Rule 72. **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72 of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority." **Failure to comply with the provisions of Local Rule 72 may result in the District Judge's refusal to consider the objection.**

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to

the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  In accordance with the requirements set forth in Local Rule 72, "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."


      **SO ORDERED.**


DATED:      Buffalo, New York
                January 3, 2017



                                    *s/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**